IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

J.E. DUNN CONSTRUCTION CO.,        )
                                   )
                  Plaintiff,       )
                                   )
v.                                 )        Case No. 11-00436-CV-W-SOW
                                   )
R. J. GRIFFIN, JR.,                )
                                   )
                  Defendant.       )

**<u>ORDER</u>**

Before the Court are plaintiff's Motion to Dismiss Defendant's Conditional Counterclaims

(Doc. #25) and defendant's Motion to Dismiss Plaintiff's First Amended Complaint or in the

Alternative for a Stay (Doc. #35). For the following reasons, plaintiff's motion is denied as moot,

and defendant's motion is granted in part and denied in part.

I. <u>Background</u>[1]

On March 25, 2011, plaintiff J.E. Dunn Construction Company ("Dunn") filed a Complaint

against defendant R.J. Griffin, Jr. ("Griffin"), alleging claims for breach of fiduciary duty (Count

I), breach of contract (Count II), and fraud (Count III). Thereafter, Dunn amended its Complaint

to include only one claim for breach of fiduciary duty against Griffin.

In March 2000, Griffin sold R.J. Griffin & Company – a commercial general contracting firm

– to Dunn. Griffin entered into an Employment Agreement with Dunn Construction where he

agreed to serve as the Chief Executive Officer of the company. This agreement ended in 2005. On

July 26, 2006, Griffin entered into a new five-year Employment Agreement whereby Griffin agreed

---

[1] The majority of the Court's background section is taken from plaintiff's Amended
Complaint.

to serve as Chairman of the Board of Dunn d/b/a Griffin & Company. This same day the parties executed a Letter Agreement.

The Employment Agreement declares:

(5) <u>Disclosure of Information</u>: Executive (Griffin) acknowledges that, as a result of Executive's employment hereunder, Executive will be making use of acquiring and/or adding to trade secrets and confidential information of a special and unique nature and value relating to such matters as Employer's systems, procedures, manuals, confidential reports and lists of clients, customers, employees, third party relationships, and professional and business policies, which is not readily available to the public . . . Executive . . . agrees that Executive shall not, except as may be required by law, at any time during or following the termination of Executive's employment hereunder for any reason, directly or indirectly, divulge or disclose for any purpose whatsoever, any of such confidential information which has been obtained by or disclosed to Executive as a result of Executive's employment by Employer or as a result of Executive's employment with the predecessor company, unless such confidential information has become public information through no act or omission to act of Executive and Executive shall never use any such confidential information except as necessary to perform services for Employer.

(6) <u>Covenants of Non-Solicitation</u>: Executive acknowledges . . . and agrees that, during the Term of this Agreement and any extension thereof and for a two-year period following Executive's voluntary termination of employment or the termination by Employer of Executive's employment for Cause:

(6.1) Executive shall not, directly or indirectly through any other person or entity, either on the Executive's behalf or for any other person or entity other than employer, solicit, call upon, divert, influence or attempt to influence any of Employer's customers or clients, with whom Executive had any contact during the period of his service to Employer or its predecessor, to transfer their business or patronage to any person or entity that competes with Employer in the construction industry; provided, however, that the foregoing restrictions shall only apply in the following geographic region . . . Georgia.

Pursuant to the 2006 Employment Agreement, Griffin received an annual base salary and numerous other benefits, including a car allowance, club dues, medical benefits, etc. Pursuant to the Letter Agreement, Griffin was also eligible to earn incentive bonuses each year.

The Employment and Letter Agreements were amended in 2008. Under these amendments,

Griffin remained an executive and employee of the company, but his title was changed to "Chairman Emeritus." The Employment Agreement was also amended by a Dispute Resolution Policy ("DRP"), which Dunn adopted on January 1, 2007. The DRP provided, in part:

> certain disputes that may arise from the employee's employment with [plaintiff] or the termination of that employment must (after appropriate attempts to resolve a dispute internally through Company management) be submitted for resolution by non-binding mediation and, if necessary, binding arbitration. In utilizing this DRP, the employee and the Company relinquish their rights to pursue, through the courts, any claim covered by this policy.

> **Covered Claims**:

> The agreement to submit to mediation and (if necessary) arbitration:
> (2) Covers any claim for:

>> (e) Claims for breach of contract or covenant (express or implied);

>> (f) Tort or statutory claim including, but not limited to, negligence, defamation, invasion of privacy, and infliction of emotional distress;

>> (j) claims for violations of confidentiality or breaches of trade secrets.

> **Claims NOT Covered**:

> Claims covered by this policy do not include:

>> (3) Claims relating to an alleged breach of an employee's non-competition, non-solicitation, fiduciary, or confidentiality obligations.

Dunn's Complaint alleges that prior to August 25, 2010, Griffin's son, Justin Griffin ("J. Griffin"), and son-in-law, Hank Maxwell ("Maxwell"), both worked for the Company. Both of these employees were terminated in August 2010 for economic reasons. Dunn alleges that in September 2010, Griffin began forwarding emails, which included confidential information, to J. Griffin and Maxwell. The Complaint further avers that Griffin continued sending J. Griffin and Maxwell confidential information throughout 2010.

-3-

During this time, Griffin allegedly met with the President of DPR Construction, Inc., who happens to be a direct competitor of Dunn. The purpose of the meeting was to discuss employment with DPR, as well as employment opportunities for J. Griffin and Maxwell. Dunn alleges that during these conversations with DPR, Griffin used confidential information to give DPR an unfair advantage over Dunn. Specifically, Griffin and/or J. Griffin and/or Maxwell communicated with DPR regarding their knowledge of construction opportunities in Georgia. Upon learning this, Dunn terminated Griffin for cause, citing violations of the non-disclosure and non-solicitation provisions in the Employment Agreement.

On January 13, 2011, Griffin filed a demand for arbitration against Dunn. The parties temporarily stayed the arbitration proceedings to attempt mediation, but the mediation proved unsuccessful. Then, in April 2011, Griffin renewed his demand for arbitration. In the arbitration demand, Griffin asserted claims for: (1) breach of the Employment Agreement; (2) declaratory judgment; (3) tortious interference with a business expectancy; and (4) defamation against Dunn. Griffin moves the Court to dismiss or, in the alternative, to stay the proceedings in this case because the one claim remaining – breach of fiduciary duty – is subject to arbitration under the DRP.

## III. Discussion

The Supreme Court has declared that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (citations omitted). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., declares a "liberal federal policy favoring arbitration agreements." Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001) (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983)). A party may request arbitration

Case 4:11-cv-00436-SOW   Document 40   Filed 01/05/12   Page 4 of 8

when the parties have agreed in writing to arbitration and one party has instead filed its claim in court. 9 U.S.C. § 4.

In assessing whether a dispute is subject to arbitration, this Court is required to determine "whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement." Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001); see also Keymer v. Mgmt. Recruiters Intern., Inc., 169 F.3d 501, 504 (8th Cir. 1999). "Any doubts in construing the contract language on arbitrability 'should be resolved in favor of arbitration.'" Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 430-31 (8th Cir. 1998) (citation omitted). The determination of whether the parties agreed to arbitrate the dispute is generally made on the basis of "ordinary state-law principles that govern the formation of contracts." Donaldson Co., Inc. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009) (quoting Hudson v. ConAgra Poultry Co., 484 F.3d 496, 500 (8th Cir. 2007)). "Thus, state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." Donaldson, 581 F.3d at 731 (citation omitted).

"Under Missouri law, [t]he primary rule in interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." Glen Martin Eng'g, Inc. v. Huawei Tech. Jamaica Co., 09-4083-CV-C-NKL, 2010 WL 318504, at *2 (W.D. Mo. Jan. 20, 2010) (quoting Speedie Food Mart, Inc. v. Taylor, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991)). In determining whether an ambiguity exists in a written contract the Court should assess "whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one

Case 4:11-cv-00436-SOW   Document 40   Filed 01/05/12   Page 5 of 8

construction giving the words their plain meaning as understood by a reasonable average person."
Id.

In the present case, the parties agree that the DRP is a valid arbitration agreement. However, the parties disagree whether Dunn's claim for breach of fiduciary duty falls within the scope of the arbitration agreement. Griffin argues that Dunn's claim for breach of fiduciary duty is encompassed by the DRP because the DRP is ambiguous and that the DRP's ambiguity should be construed in favor of Griffin under the federal substantive law of arbitrability and against Dunn under Missouri contract law. More specifically, Griffin argues the DRP could reasonably be interpreted to include and exclude Dunn's claim for breach of fiduciary duty. Dunn opposes, arguing that the DRP clearly articulates a distinction between claims covered and not covered, and that Dunn's claim for breach of fiduciary duty is clearly not covered under the DRP and thus not subject to arbitration.

The DRP ostensibly contains two categories for claims: one for claims that are covered and one for claims that are not covered. Griffin argues that the DRP is ambiguous with respect to Dunn's claim for breach of fiduciary duty in that the DRP excludes "claims relating to an alleged breach of an employee's non-competition, non-solicitation, *fiduciary, or confidentiality obligations*." However, the DRP, says Griffin, includes tort claims and "claims for violations of *confidentiality* or breaches of trade secret." Griffin points to paragraphs 44 and 45 of Dunn's Complaint in his attempt to persuade the Court that, despite its nomenclature, Dunn's claim for breach of fiduciary duty is really a tort claim for violations of Griffin's confidentiality obligations.[2] Dunn argues,

_____

[2] Paragraph 44 states: "Griffin breached his fiduciary duties, including his duty of loyalty to the Company, *by disclosing confidential information* during his employment for the express purpose of competing against the Company and/or assisting other with competing against the Company.

Paragraph 45 states: "Griffin also breached his fiduciary duty to the Company by

-6-

however, that the DRP *clearly* expresses that "claims covered by this policy do not include . . .

claims relating to an alleged breach of an employee's . . . fiduciary . . . obligations."

While Dunn's theory may seem credible on its face, the Court agrees with Griffin. On the

one hand, the DRP purports to exclude claims relating to fiduciary or confidentiality obligations;

yet, on the other hand, it includes tort claims and claims for violations of confidentiality. Dunn's

Complaint reveals that its tort claim for breach of fiduciary duty is largely based on Griffin allegedly

disclosing *confidential* information to Dunn's competitors. After reviewing the policy as a whole,

it is not unreasonable to think that the DRP could be read to include and exclude a tort claim for

breach of fiduciary duty. Under the terms of this policy, Dunn could try and avoid arbitration simply

by casting its claim as one relating to fiduciary obligations (like it did here), even though its claim

for breach of fiduciary duty is predicated on, among other things, Griffin disclosing confidential

information to a competitor. Given the federal policy favoring arbitration in cases where the

contract language is ambiguous or unclear, the Court must resolve its doubts concerning the scope

of the arbitrable issues in favor of arbitration. See Moses H. Cone Mem. Hosp., 460 U.S. at 24-25;

Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163, 1165 (8th Cir. 1984). Thus, the Court

finds that Dunn's breach of fiduciary claim must be referred to arbitration.

IV.  Conclusion

Accordingly, it is hereby

ORDERED that defendant's Motion to Dismiss Plaintiff's First Amended Complaint or in

---

knowingly facilitating and assisting the breach by former employees of their obligations pursuant
to their contractual obligation not to *disclose the Company's confidential business information*.
Griffin's facilitation and assistance occurred both during and after his employment with the
Company."

Case 4:11-cv-00436-SOW   Document 40   Filed 01/05/12   Page 7 of 8

the Alternative for a Stay (Doc. #35) is granted. The Court will refer this matter to arbitration and stay this matter during the arbitration. Upon completion of the arbitration proceedings, the parties shall advise this Court if further proceedings are necessary herein or if the matter can then be dismissed. It is further

ORDERED that plaintiff's Motion to Dismiss Defendant's Conditional Counterclaims (Doc. #25) is denied as moot.


 /s/ Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

DATED: January 5, 2012

-8-